UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SLURRY SYSTEMS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 2:04cv456 PPS |
| | ) |
| BERMINGHAMMER FOUNDATION | ) |
| EQUIPMENT, a Canadian Corporation | ) |
| and PTC, a French Corporation, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

PTC, a French company, sold a piece of equipment to Berminghammer Foundation, a Canadian Company, who in turn sold it to the Plaintiff, Slurry Systems, Inc., an Indiana Corporation. The equipment was delivered to Berminghammer in France, who then shipped it to Seattle, Washington, where it was used by Slurry Systems. The complaint alleges that the equipment was defective, which caused Slurry Systems to lose a substantial amount of money. Defendant PTC Moves to Dismiss the Complaint for lack of personal jurisdiction. Because PTC does not have minimum contacts with the State of Indiana, the motion is granted.

### I. BACKGROUND

PTC is a French corporation with its primary place of business located in Pantin Cedex, France. Berminghammer Foundation Equipment is a Canadian corporation headquartered in Hamilton, Ontario, Canada. Slurry Systems, Inc., is an Indiana corporation with its principal place of business in Gary, Indiana.

The present controversy arose from a business transaction involving a vibratory hammer manufactured by PTC. On or about October 17, 2002, Slurry Systems inquired to

Berminghammer requesting a hammer to be used on a project it was working on in the State of Washington. In turn, Berminghammer sent PTC an inquiry regarding the hammer. On or about November 14, 2002, PTC leased the hammer to Berminghammer, who, in a separate agreement, leased the hammer (with an option to purchase) to Slurry Systems. The hammer was made available by PTC to Berminghammer in Pantin, France on December 17, 2002. Berminghammer then made arrangements to have the hammer shipped to the State of Washington for use by Slurry Systems on a project there.

From approximately February 2003 through April 2003, Slurry used the hammer on its Washington job pursuant to the lease agreement that it had with Berminghammer. Sometime in October 2003, Slurry got a second job in Washington and evidently decided to purchase the hammer, and so on or about October 31, 2003, Slurry executed its option to purchase the hammer from Berminghammer. The purchase agreement provided certain limited support services relating to the hammer by PTC, which expired January 31, 2004.

PTC submitted the affidavit of Andrew Schroeder, PTC's President, in support of its Motion to Dismiss. The affidavit stated that PTC does not conduct business directly in Indiana or the United States. Further, PTC has no office, employees, or agents located in the State of Indiana. PTC does sell and lease some equipment in the United States through its North America distributors, including Berminghammer. However, the affidavit further stated that PTC has not sold and/or leased any products in Indiana in the past seven years and possibly much longer than that.

In support of its objection to Defendant's Motion to Dismiss, Slurry Systems submitted the affidavit of Fred Schmednecht, Slurry Systems President. According to Mr. Schmednecht,

Slurry System has nine pieces of equipment manufactured by PTC at its business in Gary, Indiana.  He further avers that PTC sent a representative to a job site in Indiana in 1975 to assist Slurry Systems with a piece of PTC equipment.  In addition, Slurry Systems contends that its representatives had several communications in Indiana with PTC and its subsidiaries over the past twenty-eight years, including some regarding the hammer at issue in this lawsuit.

PTC does not dispute that it manufactured the hammer or that it was rented to, and later sold by, Berminghammer to Slurry Systems.

## II.  DISCUSSION

Defendant PTC moves for dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(2) on the grounds that it is not subject to the personal jurisdiction of this Court.  Some discovery has been taken on the issue of personal jurisdiction and the discovery has been augmented by affidavits submitted by the parties.  A plaintiff bears the burden of demonstrating the existence of personal jurisdiction over a defendant and must come forth with a *prima facie* showing that jurisdiction over a defendant is proper.  *Purdue Research Foundation v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997).  In determining whether a plaintiff has met this burden, a court may consider affidavits from both parties.  *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987) (superceded by statute on other grounds).  The allegations in plaintiffs' complaint are to be taken as true unless controverted by the defendant's affidavit; and any conflicts in the affidavits are to be resolved in plaintiffs' favor.  *Id.*; *see also Purdue*, 338 F.3d at 782-83 (noting decisions from other circuits which require affirmative evidence supporting exercise of jurisdiction when defendant has submitted affidavits or other evidence in opposition to exercise of jurisdiction).

3

A federal district court exercising diversity jurisdiction has personal jurisdiction only if a court of the state in which it sits would have such jurisdiction. *RAR*, 107 F.3d at 1275. Whether an Indiana state court would have jurisdiction over PTC would usually require a two step analysis. *Purdue*, 338 F.3d at 779. First, the Court must determine whether the law of Indiana, specifically Indiana Trial Rule 4.4(A), subjects PTC to in personam jurisdiction. *Id.* If it does, then the Court must determine whether the exercise of jurisdiction over PTC comports with the requirements of federal due process. *Id.*

The parties focus their attention solely on the second issue – whether exercise of personal jurisdiction over PTC comports with notions of fair play under the Due Process clause. The Indiana long arm statute specifically allows for personal jurisdiction to the extent of the Due Process clause. In particular, Indiana Trial Rule 4.4(A) states that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Because Slurry has not argued that other portions of Indiana Trial Rule 4.4(A) vests this Court with jurisdiction over PTC, we need not address those other provisions. *United States v. Turcotte*, 405 F.3d 515, 536 (7th Cir. 2005) (undeveloped arguments are waived)).

In order for personal jurisdiction to be consistent with due process, a defendant must have established minimum contacts with the forum state such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985); *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 942-43 (7th Cir. 2000). A court examines whether the defendant's contacts with the state are such that he should reasonably anticipate being haled into court there. *Burger King*, 471 U.S. at 474; *Central States*, 230 F.3d at 943. The

4

defendant must have purposefully availed himself of the privilege of conducting activities in the forum state, invoking the benefits and protections of its laws. *Burger King*, 471 U.S. at 474-75; *Central States*, 230 F.3d at 943.

There are two types of contacts that may be sufficient to establish jurisdiction: (1) the defendant's contacts with the forum state that are unrelated to the basis of the lawsuit (general jurisdiction); and (2) the defendant's contacts that are related to the subject matter of the lawsuit (specific jurisdiction). *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 & nn. 8-9 (1984). We consider each of these in turn.

**A. General Jurisdiction**

A court may establish general jurisdiction over a defendant based on the defendant's business contacts with the forum state, and general jurisdiction permits a court to exercise its jurisdictional power in a case where the subject matter of that case is unrelated to those contacts. *Helicopteros*, 466 U.S. at 414-16 & nn. 8-9. In other words, even if PTC had no contacts with Indiana relating to the sale of the hammer at issue in this case, we could nonetheless exercise personal jurisdiction over them if they have had continuous and systematic contacts, more generally, with Indiana. *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).

Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more rigorous test than that associated with specific personal jurisdiction, requiring the party claiming jurisdiction to demonstrate the defendant's "continuous and systematic general business contacts." *Helicopteros,* 466 U.S. at 416. When determining whether a defendant's contacts are sufficient to establish general jurisdiction, courts consider the defendant's forum contacts as a whole. *See Metropolitan Life Ins. Co. V. Robertson-Cece Corp.*, 84 F.3d 560, 570

5

(2d Cir. 1996) ("There is no talismanic significance to any one contact or set of contacts that a defendant may have with a forum state; courts should assess the defendant's contacts as a whole."); *Holt Oil & Gas Corp. V. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986) ("we are required to examine [the defendant's] contacts *in toto* to determine whether they constitute the kind of continuous and systematic contacts required to satisfy due process.").

If a corporation carries on other continuous and systematic corporation activities in the state, those activities are enough to make it fair and reasonable to subject it to proceedings *in personam* in that state insofar as the proceedings seek to enforce causes of action relating to those very activities or to other activities of the corporation within the state. *Perkins v. Bungguet Consolidated Mining Co.*, 342 U.S. 437, 445-46 (1952). These contacts must be so extensive to be tantamount to the defendant being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in an Indiana court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world. *Purdue*, 338 F.3d at 787.

For example, in *Helicopteros*, the Supreme Court held that purchasing goods and services in the forum state, even at regular intervals, is not enough by itself to subject a nonresident to general jurisdiction. Thus, absent other "contacts," it cannot be sued locally on causes of actions unrelated to those purchases. *Helicopteros*, 466 U.S. at 411-12. Likewise, local advertising by itself is not enough to subject a nonresident to general personal jurisdiction. *Cubbage v. Merchent*, 744 F.2d 665, 668-69 (9th Cir. 1984).

Of particular relevance to this case, courts have held that sales and sales promotion activities through independent nonexclusive sales representatives are not enough by themselves

6

to subject an out-of state company to local jurisdiction in actions unrelated to those activities. *Congoleum Corp. v. DLW Altiengesellschaft*, 729 F.2d 1240 (9th Cir. 1984). In *Congoleum*, a German corporation could not be sued in California for fraud in connection with a licensing agreement in France, where its only contacts with California was through an independent sales agent. *Id.*

By contrast, if in addition to having independent sales representatives in the forum state, if the defendant ships directly to the customer in the forum state, then this would be enough to establish minimum contacts for purposes of establishing general personal jurisdiction. *Michael J. Neuman LTD. v. Florabelle Flowers, Inc.* 15 F.3d 721 (7th Cir. 1994). Although *Neuman* was decided under the Illinois long arm statute and not on Due Process grounds, it nevertheless provides some guidance. In *Neuman*, the defendant did not have an office in Illinois, had no employees in Illinois and did not advertise in Illinois. However, the defendant did have an independent sales representative who covered the Illinois territory and produced a substantial amount of business for the defendant there. The independent agent would make sales calls and take orders. The products were then shipped by the defendant to the customer who would pay the defendant directly. The agent was later paid her commission by the defendant. The Seventh Circuit held that this amounted to "doing business" under the Illinois long arm statute sufficient to establish personal jurisdiction. *See also Michigan Nat'l Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 466 (6th Cir. 1989) (defendant subject to general jurisdiction when it had independent sales agents and did sales exceeding several hundred thousand dollars annually through direct mail order in Michigan).

With these principles in mind we turn to the facts of this case. Slurry Systems alleges

that it had numerous contacts with PTC over a period of at least 28 years. However, when examining the evidence it appears that these communications were isolated, sporadic, and in several instances initiated by Slurry Systems itself. The Second Circuit has observed that, "[f]ew cases discuss explicitly the appropriate time period for assessing whether a defendant's contacts with the forum state are sufficiently 'continuous and systematic' for the purposes of general jurisdiction ." *Metropolitan Life,* 84 F.3d at 569.  In *Metropolitan Life,* it was noted that courts generally assess a defendant's contacts to the forum over a period ranging from three to seven years prior to the filing of the complaint. *Id.*  The *Metropolitan Life* court held that the district court reasonably limited discovery to a six-year period prior to the filing of the complaint. *Id.* The Plaintiff has not offered any law or any arguments as to why this Court should examine any of its contentions beyond a seven year period, therefore this Court declines to consider any contacts PTC may have had before 1996.[1]

In examining PTC's contacts with Indiana, the Court must start with Plaintiff's contention that Slurry Systems used PTC products in the 1990's. While the Court accepts this fact as true, PTC did not demonstrate in its brief or supporting affidavits that any equipment it used or purchased was gained by a direct sale into Indiana from PTC.  By contrast, in PTC's supporting affidavit, the PTC director stated that PTC has not sold or leased any equipment in Indiana for at least a period of seven years. (Schroeder Aff. at ¶ 19). Without contrary information, the Court must conclude that any PTC equipment Slurry may have used was gained either in a situation similar to the present one where the hammer was purchased through a third

---

[1]Even if this Court were to examine the contacts going back to 1975, as the Plaintiff suggests, the Court would still find those contacts too attenuated and sporadic to permit general jurisdiction.

8

party or handled in some transaction that predates the present inquiry.

      Slurry Systems sets forth the fact that sometime in 2000, they used a piece of PTC equipment at a trade show in Chicago. This is not material to the present analysis because this activity did not occur in Indiana. Following the trade show, Slurry Systems contacted PTC by a letter dated February 3, 2000, to discuss the pick-up of the equipment used. The letter appears to state that PTC called Slurry that morning, but only after Slurry's president left a message for someone at PTC. Contact initiated by Slurry Systems cannot stand as a basis to subject PTC to suit in Indiana. Further, because these communications dealt with a piece of equipment that was used at an Illinois trade show and appear to have been unilaterally moved back to Indiana, they are even more unconvincing as establishing systematic and continuous contact with Indiana.

      Slurry Systems also states that with respect to the present transaction, PTC and Slurry had "substantial" communications, both telephonic and written. Slurry has produced no evidence by affidavit or otherwise that any written communications were made with PTC regarding the hammer in question. In fact, the Slurry affidavit only mentions telephone conversations, no written communications. *See* Schmednecht affidavit ¶ 18. This only leaves the limited warranty services and the telephone conversations to consider. First, all warranty services, including soil sample review and technical assistance for the hammer were provided to Slurry Systems in Washington, not Indiana. Second, Slurry Systems representatives in Indiana may have contacted PTC, but the contact was initiated by Slurry Systems and was not a result of any actions by PTC in this state.

      The only other communication that the Court finds close to demonstrating a substantial interaction in Indiana would be the invoice sent from PTC to Slurry Systems in April 1999.

However, this document standing alone means little to the Court. It is a single page invoice listing some parts. While it could conceivably be some sort of sales receipt, Slurry Systems does not make that clear, and the deposition of PTC's president states that PTC has not sold any equipment in Indiana for over seven years.  That document, even in connection with the phone calls for repair parts, is not enough to convince the Court that PTC has maintained the requisite systematic and continuous contacts with the State of Indiana to subject itself to the general personal jurisdiction of this Court.  Therefore, the Court finds that general personal jurisdiction does not exist in this case.

### B.  Specific Jurisdiction

Having determined that PTC's contacts with Indiana have not been "continuous and systematic," *Hyatt Intern.*, 302 F.3d at 713, such that there is no general personal jurisdiction over PTC here, we must now determine whether specific jurisdiction over PTC exists. We find that it does not.

In determining whether specific personal jurisdiction exists, we must consider whether the defendant has purposefully established contact with the forum state and the basis of this lawsuit must arise out of these contacts. *Purdue Research Foundation*, 338 F.3d at 780; *See World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 292 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 316-17 (1945).  The analysis of contacts for specific personal jurisdiction is conducted on a case-by-case basis. *Purdue,* 338 F.3d at 780.  The inquiry into minimum contacts must focus on whether it is fundamentally fair to require the defendant to submit to the jurisdiction of the court with respect to this litigation. *Id*.  When employing this test, the Supreme Court has made it clear that the court must focus on foreseeability and whether

the defendant could have anticipated being haled into courts of the state with respect to the matter at issue. *Id.*

Jurisdiction is proper where the contacts proximately result from actions by the defendant that create a substantial connection with the forum state. *Burger King*, 471 U.S. at 475. This requirement is designed to ensure that the defendant retains sufficient, albeit minimal, ability to structure its activities so that it can reasonably anticipate the jurisdictions in which it will be required to answer for its conduct. *Id.* at 472. Thus, where a defendant has deliberately engaged in significant activities within a state, or has created continuous obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in the forum as well. *Id.* at 475. But simply contracting with a party based in Illinois is not enough to establish the required minimum contacts. *TruServ Corp. v. Flegles, Inc.*, No. 04-3819 (7th Cir. Aug. 12, 2005) (citing *Burger King*, 471 U.S. at 472 n. 14).

In *Purdue,* Purdue Research Foundation (PRF), an Indiana corporation, filed suit for breach of contract against Sanofi-Synthelabo, S.A. (SSBO), a French corporation with its principal place of business in Paris, France. *Purdue,* 338 F.3d at 775. PRF alleged that it was entitled to payments relating to the development of an antiviral drug under a Cooperative Research Agreement that SSBO France had acquired from another company through an asset purchase agreement. *Id.* The case was removed to federal court and the district court dismissed PRF's complaint against SSBO France for want of personal jurisdiction. *Id.* at 775-776. PRF argued on appeal that as a successor in interest, SSBO was subject to jurisdiction based on the

11

contract it took over. *Id.* at 783. The Seventh Circuit held that specific personal jurisdiction did not exist. *Id.* at 787. The court reasoned that an asset purchase is different than a merger between companies that would make SSBO a continuation of the original company. *Id.* at 785. The court further reasoned that SSBO structured its business transaction in such a way as to avoid liability in Indiana, a strategy which is permissible under *Burger King. Id.*; *See also Jennings v. AC Hydraulic A/S*, 383 F.3d 546 (7th Cir. 2004) (holding that a company's maintenance of a passive website alone was not enough to supply the minimum contacts necessary to permit specific personal jurisdiction in Indiana simply because the website could be accessed there).

In the present case, PTC did not reach out and solicit or initiate contact with Slurry, or any other Indiana corporation, and the bulk of the contact between the two corporations occurred while the hammer was either in Canada or Washington. PTC furnished the hammer to Berminghammer through an agreement solely with Berminghammer. Berminghammer then supplied Slurry Systems with the hammer it had requested for its Washington job site. PTC was free to structure its participation in the present transaction so as to avoid direct interaction with Slurry, thereby avoiding any possible jurisdictional ties. PTC did precisely this by contracting solely with Berminghammer, not with Slurry Systems. PTC did provide some limited warranty services on the hammer to Slurry, however, all of these activities took place while the hammer was in Washington, not Indiana. Because PTC did not avail itself of any of the privileges and benefits of doing business in Indiana, the Court cannot find that the transaction at issue here would subject PTC to suit in an Indiana court.

In addition to the structure of the transaction, the basis of this lawsuit did not arise from

12

PTC's purposeful contacts with Indiana. It appears that any contact made in Indiana regarding the hammer was initiated by Slurry Systems, not by PTC. In the Schmednecht affidavit, the only mention of telephone calls between the two corporations is, "After Slurry Systems, Inc. had purchased the vibratory hammer which is at issue in this lawsuit, representatives of Slurry Systems, Inc. had telephone conversations with representatives of PTC regarding replacement parts." (Fred Schmednecht Aff. at ¶ 18). While the Court takes the statement as true, common sense dictates that unless Slurry initiated the phone calls regarding the needed parts, PTC would have had no way to know that Slurry was in need of such parts or that the hammer was broken in the first place. To further bolster this point, Andrew Schroeder, the director of PTC, stated in his deposition that contact was initiated by Slurry Systems regarding the possible purchase of some parts from PTC. (Andrew Schroeder Dep. at p. 69). Contacts that arose solely due to Slurry's activities are not enough to form the basis of specific jurisdiction. *See Madison Consulting Group v. State of S.C.*, 752 F.2d 1193, 1202 (7th Cir. 1985) ("The question of which party initiated or solicited a business transaction has long been considered pertinent to the constitutional propriety of personal jurisdiction in a suit arising out of the transaction.").

     Slurry Systems places great weight on the notion that PTC had knowledge that the hammer in questions was being furnished to it, an Indiana corporation. While PTC may have been aware that the hammer was going to eventually be supplied to Slurry, it did nothing but make the hammer available in France. It was Berminghammer who arranged and effectuated the shipment to America. In any event, even if it was PTC that arranged the shipment, the hammer went to Washington, not Indiana. In sum, PTC did not solicit the sale, it had no part in the negotiation of the lease or sale to Slurry, and PTC was not paid directly by Slurry. The mere

13

knowledge or assumption of the end recipient, who requested delivery outside of Indiana, and never affirmatively stated its intentions for geographical use of the hammer in the future, is not enough to create the kind of necessary substantial contact with Indiana that would subject PTC to litigation here.

Finally, by way of its national and regional sales intermediaries, a party may be subject to the specific jurisdiction of an Indiana court where its product enters Indiana through the stream of commerce. *Jennings v. AC Hydraulics*, 383 F.3d 546, 550-51 (7th Cir. 2004); *World-Wide Volkswagen,* 444 U.S. at 297-98; *Roberts v. Owens-Corning Fiberglass Corp.*, 101 F.Supp.2d 1076 (S.D. Ind. 1999).  The courts have held that where the sale of a product of a manufacturer or distributor is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other states, it is not unreasonable to subject it to suit in one of those states. *Id.* The forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state. *Id.*  However, as the Seventh Circuit noted in *Jennings*, the Supreme Court has left open the question of whether a plaintiff making a stream of commerce argument needs to prove that the defendant purposely directed its activities toward the forum state. *Jennings*, 383 F.3d at 551, n. 2 (citing *Asahi Metal Indus. Co., v. Superior Court of California*, 480 U.S. 102, 111, 107 S.Ct. 1026 (1987)).

The stream of commerce argument fails here because PTC's products did not enter Indiana through any action of PTC or its distributors.  Rather, it seems clear the "unilateral action" of Slurry brought the hammer into Indiana, which, as the *Jennings* court aptly pointed

14

out, is the "very scenario that doomed the plaintiffs' case in *World-Wide Volkswagen*." *Jennings*, 383 F.3d at 551 (citing *Word-Wide Volkswagen*, 444 U.S. at 298). The hammer entered Washington in a roundabout fashion, but it never entered Indiana pursuant to this transaction. Rather, Slurry Systems unilaterally brought it to Indiana well after purchase. PTC has not sold or leased any product in Indiana for at least the past seven years, if not longer than that. The transaction at issue did not arise from any purposeful development of contacts or solicitation of business in Indiana by PTC. Further, PTC has not availed itself of the privileges and benefits of doing business with an Indiana company, because PTC did not do business with an Indiana company in this transaction.

This case is different *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660 (7th Cir. 1986), in which the court found that a Missouri fireworks manufacturer could be sued in Wisconsin court under the stream of commerce theory. Even though the defendant purchased the fireworks in Minnesota and unilaterally brought them into Wisconsin, the court found jurisdiction in Wisconsin proper. *Id.* at 668. The court reasoned that because the injury occurred within the scope of the geographic area into which the distributor directed its sales efforts, it was not important that the sale actually took place in Minnesota. *Id.* We have no evidence in this case that Berminghammer, or any PTC distributor, directed its sales efforts to Indiana. Further, the geographic areas at issue here, Indiana and Washington, are not in the same region, as they were in *Giotis*. The proximity between the two areas in *Giotis* seemed to give the court there some leeway in presuming that any sales effort would spread to both areas. Such a presumption is unwarranted when the distance between the two areas is as great as it is in our case.

Based on the totality of these considerations, the Court must conclude that Slurry

15

Systems has failed to make a prima facie showing of specific jurisdiction over PTC.  The record simply will not support the conclusion that PTC purposefully availed itself of the benefits of conducting business in Indiana with respect to this litigation and it would be fundamentally unfair to require PTC to submit to the jurisdiction of this Court. Therefore, the Court finds that specific personal jurisdiction does not exist in this case.

### III.  CONCLUSION

Accordingly, the Court finds that the exercise of jurisdiction over Defendant PTC is not proper under  federal due process because this Court does not possess specific or general jurisdiction over the Defendant.  Therefore, Defendant PTC's Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 10] is hereby **GRANTED**.

**SO ORDERED.**

ENTERED: September 14, 2005

s/ Philip P. Simon  
PHILIP P. SIMON, JUDGE  
UNITED STATES DISTRICT COURT
